**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **SAFECO INSURANCE COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 4:11–cv–01568–RBP** |
| | ) | |
| **JOHN PENDERGRASS, KENNETH BECK, and TRESEA KRIESCHER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

This matter is before the court on defendant John Pendergrass's motion to dismiss filed May 25, 2011.  Plaintiff Safeco Insurance Company of America ("Safeco") filed a response on June 8, 2011 to which Pendergrass replied on June 13, 2011.[1]

**I.  PROCEDURAL HISTORY**

The present action arises from an underlying lawsuit filed on July 14, 2009 by Pendergrass in the Circuit Court of Marshall County, Alabama against Kenneth Beck and Tresea Kriescher ("the underlying action").  In that suit, Pendergrass alleges that he was injured on or about February 24, 2009 when two dogs owned by Kriescher allegedly entered his property and attacked him.  At that time, Kriescher rented her residence at 2313 Crockett Circle in Guntersville, Alabama.  The residence Kriescher rented was owned and insured by Beck pursuant to a "Landlord Protection

---

[1] Defendant Kenneth Beck filed an answer on June 10, 2011, and seemingly takes no issue with regard to Pendergrass's motion to dismiss.  At this time, defendant Tresea Kriescher has yet to appear before the court.  On May 23, 2011, her summons was returned unexecuted, and the docket sheet shows no further attempt by Safeco to serve her.

Policy" ("the policy") with Safeco.

On May 12, 2011, Safeco initiated the present action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201,[2] citing diversity of citizenship as the basis of this court's subject matter jurisdiction.  *See* 28 U.S.C. § 1332.  In particular, Safeco requests this court to enter a judgment declaring:

A.     Safeco has no duty to defend any insured or purported insured in the underlying action.

B.     Safeco has no duty to indemnify any insured or purported insured as to any verdicts, judgments, or settlements in the underlying action.

C.     Safeco further requests judgment for its costs and disbursements incurred herein and for such other relief as may be warranted.

Pendergrass does not contest that diversity of citizenship exists among the parties, but he does contest the amount in controversy, averring that the court lacks subject matter jurisdiction.

## II. ANALYSIS

The parties' respective arguments are discussed below.  Both parties may be, at least to some extent, incorrect in their respective positions.

### A. Defendant Pendergrass.

In his motion to dismiss, Pendergrass's chief argument is that the Eleventh Circuit's decision in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), "mandates the dismissal of this

---

[2] Section 2201 of Title 28 of the United States Code permits federal courts to issue declaratory relief in certain cases.  It states:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree . . . .

28 U.S.C. § 2201(a).

case."  Specifically, Pendergrass argues "that there is a total failure of proof as [sic] the requisite $75,000 amount in controversy."  But, the substance of Pendergrass's argument—particularly his view of Safeco's burden to establish the amount in controversy and the standard this court must apply to make its determination—may be misguided.

This action has not been removed to this court.  Pendergrass has not shown how the case law applicable to removal applies in the declaratory judgment context.[3]  Nevertheless, Pendergrass cites *Lowery* and its progeny.  *Lowery* has been substantially clarified since it was  announced.[4]  Pendergrass maintains: "*Lowery* makes unequivocally clear, where, as here, the damages are unspecified in the Complaint, the factual information establishing the jurisdictional amount must come from the plaintiff" in the underlying state action.  *Innovative Health & Wellness LLC v. State Farm Mut. Auto. Ins. Co.*, No. 08-60786-CIV, 2008 WL 3471597, at *4 (S.D. Fla. Aug. 11, 2008).  Recently, in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), the Eleventh Circuit explained that *Lowery*'s continued validity is limited to the context of the second paragraph of 28 U.S.C. § 1446(b) and did not consider "whether or under what circumstances the second paragraph permits a defendant to present additional evidence to establish removability."  *Id.* at 1061 nn. 3 & 4.  In addition, the court in *Roe* stated: "We have found no case in any other circuit that

---

[3] *See SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F.Supp.2d 1245, 1254-55 (S.D. Ala. 2010) (Steele, J.) ("As a threshold matter, the Court does not read *McKinnon Motors* as encouraging the reflexive utilization in the declaratory judgment context of principles developed in the removal context.").  *But cf. Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 n.1 (11th Cir. 2003) (explaining that declaratory judgment actions are similar to removal cases); *see also St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, we find the procedures developed in those cases to be *instructive* in the converse context of declaratory judgment actions . . . ." (emphasis added)), *quoted with approval in MCKinnon Motors*, 329 F.3d at 807 n.1.

[4] *See, e.g.*, *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010).

purports to prohibit a district court from employing its *judicial experience or common sense*[5] in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy." *Id.* at 1063 (Emphasis added).

### B. Plaintiff Safeco.

Safeco argues that it "can show the amount in controversy requirement is met when Pendergrass seeks not only compensatory *but also punitive damages* to compensate for his alleged continuing physical pain and suffering, mental pain and anguish, permanent injuries and disabilities, enjoyment of life, and scarring and disfigurement." (Emphasis added). But Safeco's policy with Beck expressly and excludes punitive damages from coverage. It states:

### 2. Coverage L — Premises Liability does not apply to:

. . . .

        b. ***punitive damages*** awarded against any ***insured*** unless due to wrongful death;

(Emphasis in original). In light of the preceding policy provision, this court may be precluded from taking punitive damages into consideration. The Eleventh Circuit has explained: "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . *unless it is apparent to a legal certainty that such cannot be recovered*." *Holley Equip. Corp. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (Emphasis added) (citations and footnote omitted); *see also Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1299-1300 (11th Cir. 1999); *SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F.Supp.2d 1245, 1254-55 (S.D. Ala. 2010) (Steele, J.). The situation here is somewhat different. While the policy excludes the recovery of

---

[5] The term "judicial experience and common sense" was so central to the Eleventh Circuit's ruling in *Roe* that the court repeated the phrase on eight separate occasions. *See* 613 F.3d 1058.

punitive damages from the insurer, the plaintiff in the underlying action might be able to recover punitive damages.  This court concludes that, in determining the amount in controversy here, it should not consider punitive damages.

### C. Further Analysis.

In a declaratory judgment action brought by an insurer in federal court, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).[6]  Further, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted).  As Chief Judge Steele of the Southern District of Alabama recently stated:

> "[W]here jurisdiction is based on a claim for indeterminate damages, . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  This principle applies to declaratory judgment actions brought in federal court by an insurer.  *Id.*  In such cases, the raw conclusion of the plaintiff that the amount in controversy exceeds the jurisdictional amount does not keep the damages sought from being indeterminate.  *Id.* at 808 (a prayer for damages is indeterminate for purposes of this rule if the complaint "'does not allege a specific amount of damages'") (quoting *St. Paul Reinsurance Co. v.*

---

[6] *See also McCollough Enters., LLC v. Marvin Windows & Doors*, No. 09-0310-WS-B, 2009 U.S. Dist. LEXIS 62017, 2009 WL 2216599, at *1 (S.D. Ala. July 20, 2009).  There, Judge Steele held:

> "[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $ [75],000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  Because the plaintiffs have made an unspecified demand for damages, the *Tapscott* standard applies here.  *Under Tapscott, the defendant must show that, if the plaintiffs prevail on liability, they will more likely than not be awarded over $75,000.*

*Id.* at *1 (emphasis added) (footnote omitted).

*Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). Because the amended complaint alleges only that the amount in controversy exceeds $75,000, (Doc. 7 at 2, ¶ 7), White-Spunner [*i.e.*, the plaintiff] must establish the existence of subject matter jurisdiction.

> "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *McKinnon Motors*, 329 F.3d at 807 (internal quotes omitted). "In other words, the value of the requested injunctive [or declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the injunction [or declaratory relief] were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (en banc). "[I]n declaratory judgment cases [such as this one] that involve the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim—not the face amount of the policy." *E.g., Hartford Insurance Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (internal quotes omitted); *accord Toler v. State Farm Mutual Automobile Insurance Co.*, 25 Fed. Appx. 141, 144 (4th Cir. 2001); *Farmers Insurance Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979).

*White-Spunner Constr., Inc. v. Zurich Am. Ins. Co.*, No. 10-0158-WS-C, 2010 U.S. Dist. LEXIS 90339, 2010 WL 3489956, at *2 (S.D. Ala. Aug. 30, 2010) (alterations in original).[7]

Further, the Eleventh Circuit instructed in *Roe* that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062 (footnote omitted). The court also stated:

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount."

*Id.* at 1061-62 (internal citations omitted) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 770 (11th Cir. 2010)). As Judge Lawson of the Middle District of Georgia has observed: "*Roe*

---

[7] All alterations above appear in Chief Judge Steele's August 30, 2010 opinion in *White-Spunner* except the addition of "[*i.e.*, the plaintiff]" to the last sentence in the first paragraph.

made clear that a district court need not dismiss a case for lack of subject matter jurisdiction solely because the complaint alleges indeterminate damages." *Carr v. Halloway*, No. 5:09-cv-327 (HL), 2010 U.S. Dist. LEXIS 104878, at *6 (M.D. Ga. Oct. 1, 2010).

As such, the issue for this court to determine is whether the face of Safeco's complaint, in conjunction with Pendergrass's submissions in the underlying state court action, allows this court to "reasonabl[y] deduc[e]" that the amount in controversy exceeds the $75,000 jurisdictional minimum. *Roe*, 613 F.3d at 1061-62 (citation omitted). And in this context, *i.e.*, the declaratory judgment context, "the jurisdictional amount in controversy is measured by the value of the underlying claim—not the face amount of the policy." *E.g.*, *Hartford Insurance Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002).[8]

Safeco argues that "[i]t is a reasonable deduction for this Court to determine when a party seeks a laundry list of damages, beginning with medical injuries already establishing a floor of over $40,000.00, it is more than reasonable to determine that the jurisdictional minimum of $75,000.00 is met or exceeded." In support of this estimate for medical expenses, Safeco submits Pendergrass's interrogatory responses, propounded by Beck in the underlying state action, where Pendergrass claims to have suffered at least $41,880.29 in medical costs.[9] Therefore, Pendergrass's remaining

---

[8] The policy coverage amount is $100,000.00.

[9] Specifically, Pendergrass's interrogatory response stated the following in response to a request for "an itemized statement of all expenses incurred on account of your alleged injuries," which was propounded by Beck in the underlying state court action:

| | |
|---|---|
| The Orthopedic Center | $20,835.00 |
| Dr. Barbara Kopyta | $122.00 |
| The Surgery Center of Huntsville | $15,730.00 |
| Marshall Imaging Center | $2,217.00 |
| Marshall Medical Center North | $766.29 |
| Performance Group | $1,550.00 |
| Huntsville Anesthesiology | $660.00 |

claims in the underlying state suit—in other words, his non-punitive damage claims—must amount to, at least, $33,119.72.  *See Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) ("Thus, the amount in controversy in this case is $75,000—exactly one penny short of the jurisdictional minimum of the federal courts.").

In Pendergrass's most recent state court complaint, his Second Amended Complaint, he alleges the following injuries and damages:

> a.    He incurred, and continues to incur, physical pain and suffering as a result of the physical injuries sustained in the above-described incident;
>
> b.    He incurred, and continues to incur, mental pain and anguish as a result of the physical injuries sustained in the above-described incident;
>
> c.    He incurred medical expenses in and about an effort to treat, cure and/or heal the physical injuries sustained in the above-described incident;
>
> d.    He incurred permanent injuries and disabilities as a result of the physical injuries sustained in the above-described incident;
>
> e.    He lost, and continues to lose, enjoyment of life as a result of the physical injuries sustained in the above-described incident;
>
> f.    He sustained permanent scarring and disfigurement as a result of the physical injuries sustained in the above-describe [sic] incident;

> WHEREFORE, Plaintiff [Pendergrass] demands judgment against the Defendants [*i.e.*, Beck and Kriescher], whether named or fictitiously described for both compensatory and punitive damages in an amount which the jury deems fair and just to compensate Plaintiff [Pendergrass], plus interest and costs of Court.

It is the opinion of this court that Pendergrass's remaining claims for damages in the

---

The sum of these expenses amounts to $41,880.29.

underlying state suit, an opinion formed by this court's "judicial experience and common sense," *Roe*, 613 F.3d at 1062, exceeds $33,119.72.   Specifically, Pendergrass's claims for damages—including "physical pain and suffering," "mental pain and anguish," "permanent injuries and disabilities," loss of "enjoyment of life," and "permanent scarring and disfigurement"—could easily result in an award of in excess of $33,119.72.[10]  When that amount is combined with the medical expenses Pendergrass already has claimed to have incurred, this court concludes that Safeco has shown by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional minimum required under 28 U.S.C. § 1332(a).

**D.  Pendergrass's Subsequent Settlement Offer**.

In his reply, Pendergrass submitted a letter as proof of a purported $45,000 continuing settlement offer in the underlying action.   The letter states, in pertinent part, that: "I would like to remind Safeco that my client made a $45,000 final offer at mediation which he graciously agreed to leave open for several weeks.   This offer is obviously less than $75,000 and certainly well within the policy limits."   This letter, however, was sent to Safeco's counsel on May 20, 2011—five days

---

[10] In finding that the amount in controversy exceeds $75,000, this court does not consider Safeco's costs in undertaking its duty to defend the insured in the underlying state action.  While binding precedent establishes that "[t]he pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount," *Stonewall Insurance Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976), Safeco has failed to present any evidence regarding the value of its duty to defend and has not argued that this should be taken into consideration.  In short, any speculation by this court in an effort to place a value on Safeco's duty to defend would be impermissible.  *See Pretka*, 608 F.3d at 771.

Finally, as to *Lopez*'s binding nature on this court, the Eleventh Circuit, in *Bonner v. City of Prichard, Ala.*, held:

[T]hat the decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit

661 F.2d 1206, 1207 (11th Cir. 1981).

before Pendergrass filed his present motion to dismiss.

As one district judge in this circuit has observed:

> "While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). What it counts for, however, depends on the circumstances. Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide "specific information . . . to support [the plaintiff's] claim for damages" suggest the plaintiff is "offering a reasonable assessment of the value of [his] claim" and are entitled to more weight. *Golden Apple Management Co. v. Geac Computers, Inc.*, 990 F.Supp. 1364, 1368 (M.D. Ala. 1998). . . .

*Jackson v. Select Portfolio Servicing, Inc.*, 651 F.Supp.2d 1279, 1281 (S.D. Ala. 2009) (alterations in original) (footnotes omitted).

In this case, the letter proffered by Pendergrass amounts to nothing more than a bald assertion that he offered to settle the case for $45,000, and it is void of any "specific information . . . to support [Pendergrass's] claim for damages." *Golden Apple Mgmt. Co.*, 990 F.Supp. at 1368. Further, the letter was produced by Pendergrass's counsel after litigation in federal court had commenced. While this letter "counts for something," *Burns*, 31 F.3d at 1097, this court finds that it is entitled to little weight.[11]

### III. CONCLUSION

For the reasons set forth above, defendant Pendergrass's motion to dismiss will be **DENIED**.

---

[11] It may well take in consideration whether there is any insurance coverage.

10

**DONE**  the 23rd day of June, 2011.

_____

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**